# THE WASHBURN-CROSBY MILLING COMPANY *v.* BROWN.

### [No. 8,307.   Filed April 21, 1914.]

1. PLEADING.—*Cross-Complaint.—Initial Attack on Appeal.*—Where the sufficiency of a cross-complaint is first attacked on appeal, it will be held sufficient if it contains facts to bar another action, hence a cross-complaint alleging a balance due defendant on a car of wheat on which plaintiff claimed an overpayment, and containing a bill of particulars showing the balance due, for which judgment was asked, was sufficient as against such initial attack. p. 107.

2. EVIDENCE.—*Parol Evidence.—Letters Evidencing Sale.—Completeness.*—Where a buyer wrote that, in accordance with a conversation with its agent who had interviewed the seller with reference to the purchase of wheat, it had booked a purchase of 1,000 bushels of wheat "subject to our weights and inspection", and the seller wrote sending bill of lading for about 700 bushels sold to the buyer's agent, but saying nothing about weights or inspection, the letters did not constitute a complete contract, and evidence of the conversation between the seller and the buyer's agent was admissible.   pp. 108, 109.

3. PRINCIPAL AND AGENT.—*Estoppel to Deny Agent's authority.*—Where a seller wrote to a buyer of wheat, stating that he enclosed bill of lading for about 700 bushels of wheat sold to the buyer's agent at a named price, and the buyer accepted the shipment and remitted the amount asked by purchaser, it could not afterwards deny the authority of its agent in the premises. p. 109.

4.  EVIDENCE. — *Parol Evidence.* — *Letters Evidencing Contract.* — *Completeness.*—Where the terms of an agreement are set out fully in letters exchanged, they constitute a complete contract; but if they show the contract to be incomplete, parol evidence may be resorted to for the purpose of showing the exact terms, and the contract will be treated as wholly parol.  p. 109.

5.  APPEAL. — *Evidence.* — *Weight.* — The court on appeal cannot weigh conflicting evidence.  p. 109.

6.  SALES.—*Construction of Contract.*—*Weight and Inspection.*— *Evidence.*—*Admissibility.*—A letter from a buyer of wheat in Louisville, Ky., stating that it had booked a purchase of 1,000 bushels, in accordance with a conversation with its agent, "subject to our weight and inspection", meant, when fairly construed, that the inspection and weights were to be taken at Louisville, the destination of the shipment, but such fact would not preclude the seller from showing the amount and condition of the wheat put in the car at the initial point of shipment as a circumstance contradicting or tending to contradict the evidence as to quantity and condition at the destination.  p. 109.

From Washington Circuit Court; *Thomas B. Buskirk,* Judge.

Action by The Washburn-Crosby Milling Company against Oliver L. Brown.  From a judgment for defendant, the plaintiff appeals.  *Affirmed.*

*Harvey Morris* and *Helm & Helm,* for appellant.
*Frank L. Driskell* and *W. W. Hottel,* for appellee.

SHEA, P. J.—Appellant brought this action to recover from appellee the sum of $137.40 on account of an alleged overpayment on a carload of wheat purchased from appellee. The first paragraph of complaint contains the usual allegations for money had and received.  The second alleges in substance that appellant is a corporation under the laws of Kentucky; that on July 20, 1909, it contracted with and purchased from appellee one carload of No. 2 red wheat at a price of $1.12 per bushel, f. o. b., Campbellsburg, Indiana, to be shipped to Louisville, Kentucky, subject to its inspection and weights; that the contract was in writing and contained in a letter reading as follows:

"Louisville, Ky., 7/20/09.

Mr. O. L. Brown, Campbellsburg, Indiana, Dear Sir— In accordance with telephone conversation with our Mr. Harris this morning, we are booking for 'your account, approximately 1,000 bushels, No. 2 red wheat, at $1.12, f. o. b., Campbellsburg, for prompt shipment, and subject to our weights and inspection. Mr. Harris advises us you expect to get this car out not later than Friday, and we trust you will use every effort to do so as for later shipments we are bidding a lower price. Very truly, Washburn-Crosby Milling Co. F. H. Nesmith. Incorporated."

Pursuant to appellant's proposition appellee shipped one carload of wheat on July 29, 1909, notifying appellee by letter as follows:

"Campbellsburg, Indiana, July 28, 1909.

Washburn & Crosby Co., Louisville, Ky. Gentlemen, enclosed you will find bill of laden for about 700 bu of wheat, which I sold to Mr. Wallace at 1.12 f. o. b. here, will you please send me a check for about $675.00. In regard to other bids you have been about the same, as others, Ballards and Ballard bid has been 1 ct higher a time or two. It has been very rainy here for 3 or 4 days. Yours truly, O. L. Brown."

Upon receipt of the letter appellant did remit to appellee the sum of $675; that when the wheat afterwards arrived and was weighed, it was found the car contained but 486 2/3 bushels instead of 700 as stated by appellee, and by reason of such shortage appellant had overpaid in the sum of $137.40, for which judgment is asked. Both paragraphs allege a demand on appellee for the sum claimed before suit was brought and the letters are made exhibits to this paragraph of complaint.

Appellee answered both paragraphs in general denial, and also filed a cross-complaint alleging that appellant was indebted to him in the sum of $139.24, being balance due on the car of wheat in question, and demanding judgment in accordance with a bill of particulars as follows:

"The Washburn-Crosby Milling Company
    To Oliver L. Brown, Dr.
1910, July To 727 bu. wheat @ $1.12 per bu. . .$814.24
        Credit by cash ................ 675.00

        Balance due ................$139.24"

Appellant answered the cross-complaint first by way of set-off, averring substantially the same facts contained in the second paragraph of complaint. It is further charged that the car contained 540 bushels of wheat only, instead of 700 bushels, and that it was not No. 2 red, but a very inferior grade of wheat of much less value than the grade ordered by appellant, and not worth more than seventy-five cents per bushel; that the wheat was damp, musty and full of smut to such an extent that it could only be graded as rejected wheat; that on account of the shortage in the amount of wheat, appellant had overpaid appellee in the sum of $137, and on account of the damaged condition and inferior grade of the wheat it has been damaged in the sum of $200, which amounts it offers to set off against any sum found due it, asking judgment for the remainder. Appellant further answered the cross-complaint by a general denial.

The cause was tried by the court and a finding made against appellant on each paragraph of the complaint, and for appellee on his cross-complaint. Judgment was rendered in favor of appellee for $109 and costs. The errors relied on for a reversal are: (1) The cross-complaint of appellee does not state facts sufficient to constitute a cause of action. (2) The court erred in overruling appellant's motion for a new trial.

The first error assigned raises the question of the sufficiency of the cross-complaint. It does not appear from the briefs that a demurrer was filed by appellant to

1. the cross-complaint, therefore there was no ruling of the court upon a demurrer. The rule is thoroughly

established in this State that where the question is first raised in this court upon an assignment of error, if the pleading contains facts which would bar another action, it will be sufficient. *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 405, 79 N. E. 347, 7 L. R. A. (N. S.) 143, 10 Ann. Cas. 942; *Oliver Typewriter Co.* v. *Vance* (1911), 48 Ind. App. 21, 22, 95 N. E. 327, and authorities cited. Appellant's learned counsel in a very able brief do not argue this question directly. However, the facts set out in the cross-complaint are sufficient to bar another action for wheat sold and delivered to appellant during the time stated, and is therefore good, where the question is raised on an assignment of error in this court for the first time.

In the motion for a new trial eight separate reasons are set out and very ably argued. It is earnestly insisted that

2. the letter addressed to appellee dated July 20, 1909, together with the letter received by appellant from appellee, dated July 28, 1909, constitutes a written contract. The questions presented in the motion for a new trial are all more or less dependent on the construction given to these letters. It will be observed that in appellant's letter reference is made to a conversation with Mr. Harris, who was their representative in the locality of appellee's place of business, and that the amount of wheat was approximately 1,000 bushels. Appellee's letter in reply states in terms that the wheat was sold to Mr. Wallace (meaning Mr. Harris) at $1.12, f. o. b., Campbellsburg, and that the amount shipped was about 740 bushels. These two letters do not constitute a complete contract. The reference to telephone talks and the time of shipment as arranged by Mr. Harris, in appellant's letter, shows that there was some dependence to be placed upon the conversations between Mr. Harris and appellee. Appellee's letter does not purport to be a reply to appellant's letter, if it be taken in its plain and ordinary meaning, as it states that the sale was made to Mr. Harris, who was the repre-

sentative of appellant. The amount of wheat to be shipped is differently stated, and there is no reference to "weight and inspection". The only point of coincidence is that the wheat was to be f. o. b., Campbellsburg. The record shows appellant accepted this carload of wheat after the

3. receipt of the letter from appellee, which plainly states the wheat was sold to Mr. Harris, furthermore appellant remitted, upon receipt of the letter, $675, and made no denial or question of Harris' authority. Having acted with full knowledge of appellee's belief that the wheat was sold to Harris, appellant can not now be heard to say that Harris acted without authority.

It is true the rule is well settled that where, by an exchange of letters, the terms of the agreement are set out fully, they constitute a complete contract, but on

4. the other hand, if the letters show the contract to be incomplete, either in the proposition made or its acceptance, then parol evidence may be resorted to for the purpose of showing the exact terms, as the contract is then treated as wholly in parol. Bishop, Contracts (2d ed.) §§175, 164; *Louisville, etc., R. Co.* v. *Reynolds* (1889), 118 Ind. 170, 172, 20 N. E. 711; *Supreme Lodge, etc.* v. *Graham* (1912), 49 Ind. App. 535, 97 N. E. 806; *Marion School Tp.* v. *Carpenter* (1895), 12 Ind. App. 191, 193, 39 N. E. 878.

Therefore no error was committed in the admission

2. of statements and representations made by Harris to appellee with respect to the transactions here involved, tending to show a contract of purchase and sale.

Under the well-established rule of our court, we are not permitted to weigh the evidence. There is a conflict between the testimony of the witnesses for appellant

5. and those for appellee as to the amount of the wheat. The letter from appellant to appellee states that the

6. wheat was subject to its weight and inspection. We think a fair construction of this language is that inspection and weights were to be taken at the city of

Louisville, the destination of the car, and that it was proper to hear the evidence of appellant as to the weight of the wheat at that point, and also as to the quality found upon investigation, however, it was equally proper to hear the evidence of appellee's witnesses as to the quality of the wheat, and the weight as it was found to be when loaded in the car at Campbellsburg. The fact that the wheat was to be inspected at Louisville was not intended to preclude appellee from attempting to show the amount and condition of wheat put in the car at the initial point of shipment, as a circumstance contradictory or tending to contradict the evidence of appellant as to the quantity and condition of wheat when it arrived at Louisville. There is sharp conflict in the evidence both as to the quality and quantity of the wheat. It is too well settled to require the citation of authority that where there is a conflict in the evidence, this court will not weigh it. The trial court having heard all of this evidence, its decision must be taken as conclusive on that point.

We can not say as a matter of law that the amount of recovery was too large. *Shaw* v. *Ayres* (1897), 17 Ind. App. 614, 47 N. E. 235.

We find no available error in the record. Judgment affirmed.

NOTE.—Reported in 104 N. E. 997. As to parol evidence to explain contemporaneous written agreement, see 11 Am. St. 394. See, also, under (1) 31 Cyc. 770; (2) 17 Cyc. 741; (3) 31 Cyc. 1237; (4) 17 Cyc. 746; (5) 3 Cyc. 349; (6) 35 Cyc. 566.